THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. JOE SCHILLACI, Defendant-Appellant.

Fourth District   No. 4—87—0428

Opinion filed June 30, 1988.

512

Daniel D. Yuhas and Arden J. Lang, both of State Appellate Defender's Office, of Springfield, for appellant.

Donald D. Bernardi, State's Attorney, of Pontiac (Kenneth R. Boyle, Robert J. Biderman, and Michael Blazicek, all of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

JUSTICE KNECHT delivered the opinion of the court:

Defendant Joe Schillaci was charged by indictment with two unlawful deliveries of cocaine to the State's confidential source, Ted Dunlap (Dunlap), on October 2 and October 16, 1986. Defendant's wife, Brenda, was also charged with the October 16 delivery. Defendant admitted the deliveries and presented the affirmative defense of entrapment. Brenda denied the charge against her and was acquitted. A Livingston County jury acquitted defendant of the October 2, 1986, delivery but found defendant guilty of the October 16 delivery. Defendant was sentenced to four years' imprisonment, fined $1,100 for the street value of the cocaine and ordered to pay an additional $5,000 discretionary fine, plus court costs. Defendant appeals the conviction, sentence and fine. We affirm the judgment of the trial court and modify the amount of the fine.

At defendant's trial, Special Agent Gary King from the Division of Criminal Investigation (DCI) and Deputy Sheriff Robert Brandt testified they met with Dunlap on the morning of October 2, 1986, searched him and his vehicle for narcotics, and gave him $320 to purchase one-eighth of an ounce of cocaine from defendant. Dunlap was not carrying any drugs. King and Brandt followed Dunlap to and from defendant's home after which Dunlap handed over a plastic bag and advised the officers he had just purchased $320 worth of cocaine from defendant. King again searched Dunlap and his vehicle and found no narcotics.

Agent King and DCI Inspector Paul Joseph Lehmann testified that on October 16, 1986, they gave Dunlap $1,150 to purchase one-half of an ounce of cocaine from defendant. Again Dunlap and his vehicle were searched for narcotics. The officers separately followed Dunlap's truck from the meeting spot to a tavern in Pontiac.

King testified he saw defendant get into the driver's side of Dunlap's vehicle. The two drove around for awhile and then went to the entrance of the American Legion. King was parked about a quarter of a mile away from the building and observed a maroon Buick pull up behind Dunlap's vehicle. Defendant exited the truck and got into the Buick. The Buick went around the truck, made a U-turn and came back alongside the truck, where it stopped briefly. After the transaction, Dunlap and the agents met and Dunlap handed them a Crown Royal bag containing a clear plastic bag filled with cocaine that Dunlap said he had just purchased from defendant. Dunlap and his vehicle were searched and no narcotics were found.

Ted Dunlap testified he had been employed for six months in 1986 by Agent King as a confidential source to seek out alleged drug dealers in the Pontiac Caterpillar plant. A job was created for him with the plant cleaning service. The State compensated Dunlap for each prosecutable case.

Defendant was employed by Caterpillar as a labor bargaining chairman. Dunlap and defendant first met at Big Dad's Tavern in Pontiac. Dunlap testified since then he had seen defendant ingest and sell cocaine on several occasions. While at work at the plant, Dunlap asked defendant to sell him one-eighth of an ounce of cocaine and defendant agreed. The transaction took place on October 2, 1986, at defendant's home, where the cocaine was exchanged for $320. Dunlap saw defendant put the money in a briefcase containing an inch-thick stack of money. Dunlap said he delivered the cocaine to the State agents. He did not keep for himself any of the drugs he bought on behalf of DCI.

At work and via telephone, Dunlap arranged to purchase one-half of an ounce of cocaine from defendant on October 16, 1986. The purchase price was $1,150. According to Dunlap, on October 16, he met defendant in a downtown Pontiac parking lot. Defendant insisted on driving Dunlap's truck with Dunlap in the passenger seat. Defendant seemed nervous and expressed fear Dunlap was a government agent. When defendant threatened Dunlap, the latter offered to back out of the deal, but defendant refused and demanded the money.

Defendant drove Dunlap's truck to the American Legion entrance, where Brenda joined them in the Buick. Defendant grabbed the $1,150 and stuffed it into his pocket saying "just wait a minute." Dunlap testified defendant drove the Buick around the truck and tossed the cocaine, which was in a Crown Royal bag, through the truck window and drove away. Dunlap said he immediately drove to a prearranged meeting place and handed the cocaine to the State agents.

Dunlap testified he had used illegal drugs several times during the 1986 investigation to keep his cover intact even though such usage was against DCI rules. Dunlap did not report his drug use to Agent King. Dunlap admitted to taking prescription medications in quantities greater than directed by his physician.

Defendant took the stand and testified Dunlap approached him frequently in Big Dad's and asked to buy cocaine. Dunlap told defendant he ingested cocaine intravenously and needed some "real bad." Defendant said he told Dunlap he did not sell cocaine.

Defendant said Dunlap was especially desperate on October 1, 1986, and offered to trade defendant some prescription pills for cocaine. Dunlap was shaking and begged defendant for help. Defendant testified he reluctantly agreed to the sale. Dunlap asked defendant to divide the cocaine into two separate bags, one containing pure cocaine and one containing cut cocaine. The next day Dunlap came to defendant's home and exchanged $270 and some pills for the two bags of cocaine. Defendant said Dunlap stuffed the smaller bag into his crotch before he left the house.

Defendant testified Dunlap attended parties and ingested drugs 8 to 10 times with defendant in his home between October 2 and October 16, 1986. Defendant refused to become Dunlap's supplier. However, he agreed to purchase for Dunlap one-half of an ounce of cocaine to be delivered on October 16 and divided into two bags.

Defendant said he met Dunlap on October 16 in downtown Pontiac, drove around in Dunlap's truck for awhile and eventually went to the Legion billet. Defendant testified he gave Dunlap a Crown Royal bag containing two bags of cocaine in exchange for $1,150 even though defendant suspected Dunlap might be a government agent. Dunlap put one bag in his crotch and kept the other bag visible. After both men took two snorts of cocaine, defendant drove away in his Buick.

Defendant admitted he and his wife were habitual cocaine users and addicts at the time of the sales. They had been using cocaine intravenously for two months until they started to run out of money. The couple had a two-gram-a-day habit. Defendant said he paid for drugs with money he received from the sale of his home, with his Caterpillar paycheck and with funds in a bank account. Defendant denied owning chemical scales which would have enabled him to measure, bag and sell cocaine. Defendant named Ross Konrad as his drug supplier.

Prior to trial defendant made a motion to dismiss the indictment on the grounds that the cocaine delivery was made by defendant to Dunlap, a known drug addict and dealer. During discovery, defendant requested information which would tend to negate his guilt or reduce

his punishment. The State responded it did not possess such information, although the State's Attorney had interviewed numerous individuals regarding Dunlap's illegal activities while working undercover for DCI. Defendant was denied an evidentiary hearing on the issue of Dunlap's conduct and credibility. In addition, a motion *in limine* precluded defendant from presenting evidence of his drug rehabilitation subsequent to the October 16, 1986, delivery.

Brenda Schillaci's testimony corroborated that of her husband. Several other witnesses for the defense described incidents when Dunlap had offered them illegal drugs and had used illegal drugs in their presence.

Ross Konrad, another Caterpillar employee, testified he had recently pleaded guilty to delivering cocaine to Dunlap and one other person. The State promised to recommend a two-year prison term in exchange for the plea and his testimony in this case. Konrad said he had been in the drug buying and selling business since November 1985. He and his girlfriend often went to the Schillacis' home, where he observed defendant use cocaine, pills and marijuana 75 to 100 times. At least 25 times, Konrad saw defendant cut cocaine, bag and weigh it on a triple beam scale. Konrad testified defendant bought cocaine in large quantities and paid for it with money and prescription pills.

Konrad and defendant once drove to Aurora, Illinois, where they purchased one ounce of cocaine for $1,900 which defendant said he intended to sell. Konrad said on a weekly basis from November 1985 until January 1986, defendant gave Konrad $1,100 to go to Aurora to purchase one gram of cocaine for defendant to sell. Konrad saw defendant sell cocaine at Big Dad's tavern at least five or six times. Defendant had bragged that in one hour in December 1985 he had sold 55 one-half-gram bags of cocaine.

Defendant admitted he bought drugs from Konrad and accompanied him once to Aurora but was merely along for the ride. Konrad had bought one ounce of cocaine that day but defendant denied he took part in the delivery. Defendant said he never sold cocaine at Big Dad's. The two deliveries to Dunlap were his only sales.

Following jury deliberations, Brenda was found not guilty of the October 16 delivery. Defendant was convicted of selling and delivering cocaine on October 16, 1986, but he was acquitted on the October 2 delivery.

At the sentencing hearing defendant and Brenda both testified as to their rehabilitation from drug dependency and their religious conversion. Several witnesses for the defense testified to their belief that defendant's religious conviction was sincere and that he no longer uses

drugs. The couple testified they signed themselves into separate chemical dependency units on October 20, 1986, to be treated for their cocaine habits. They did not complete the programs. Later the two were treated on an outpatient basis. The treatment was cut short for lack of funds. Defendant again admitted himself into a hospital on November 12, 1986, and requested detoxification for cocaine addiction. He was discharged three days later.

The trial court sentenced defendant to four years' imprisonment in the Department of Corrections, fined him $1,100, for the street value of the cocaine, and a discretionary fine of $5,000, plus costs.

At trial defendant presented the defense of entrapment. On appeal he argues the State's evidence was insufficient to overcome his entrapment defense beyond a reasonable doubt. We disagree.

■ Entrapment exists "when the criminal design originates with the officials of the Government, and they implant in the mind of an innocent person the disposition to commit the alleged offense and induce its commission in order that they may prosecute." (*Sorrells v. United States* (1932), 287 U.S. 435, 442, 77 L. Ed. 413, 417, 53 S. Ct. 210, 212-13; Ill. Rev. Stat. 1985, ch. 38, par. 7—12.) Whether the affirmative defense of entrapment was established as a matter of law depends on if (1) the government initiated the crime and induced the defendant to commit it and (2) the defendant had no predisposition to commit the offense. *People v. Marshall* (1981), 101 Ill. App. 3d 244, 427 N.E.2d 1333.

Defendant argues he sufficiently proved the defense of entrapment. (*People v. Fisher* (1979), 74 Ill. App. 3d 330, 392 N.E.2d 975.) He maintains the trial court record indicates the idea of the cocaine sale originated with the State of Illinois through its agent, Ted Dunlap. Dunlap was employed and placed by DCI at the Caterpillar plant in Pontiac for the purpose of investigating the delivery of controlled substances there. As a result of this investigation Dunlap became acquainted with defendant and actively encouraged him to commit the crime with which he was charged.

■ Moreover, defendant insists the State failed to prove the absence of entrapment beyond a reasonable doubt. (*People v. Raess* (1986), 146 Ill. App. 3d 384, 496 N.E.2d 1186; Ill. Rev. Stat. 1985, ch. 38, par. 3—2(b).) A defendant's predisposition to commit a crime is one of the crucial elements of the defense of entrapment. *People v. Cross* (1979), 77 Ill. 2d 396, 396 N.E.2d 812, *cert. denied* (1979), 440 U.S. 974, 59 L. Ed. 2d 792, 99 S. Ct. 1542.

■ The factors the courts have considered when making a determination as to predisposition include the defendant's initial reluctance

or his ready complaisance to commit the crime in question (*People v. McSmith* (1961), 23 Ill. 2d 87, 178 N.E.2d 641), defendant's familiarity with drugs, and his willingness to accommodate the needs of drug users. (*People v. Tipton* (1980), 78 Ill. 2d 477, 401 N.E.2d 528.) A defendant will not be found to have been entrapped if he acceded to the crime readily (*People v. Natoli* (1979), 70 Ill. App. 3d 131, 387 N.E.2d 1096) and had a ready source from which to supply the drugs. *People v. Myers* (1980), 92 Ill. App. 3d 229, 415 N.E.2d 1108.

■■ ■ Defendant does not have a criminal record. Prior to his conviction in this case, defendant had been a chief labor negotiator for Caterpillar. Defendant maintains he did not solicit Dunlap's business, rather the cocaine sales and deliveries in October 1986 were originally and solely the State's idea.

Despite defendant's lack of criminal record, he is not an unwary innocent with no previous disposition to sell cocaine. The record does not show he was incited, induced or lured into a cocaine sale that was the creation of the government. The following facts support defendant's conviction and refute his defense of entrapment.

Defendant insists he was reluctant to sell cocaine to Dunlap and did not easily acquiesce to Dunlap's repeated demands. However, defendant admitted he and his wife had a very expensive weekly cocaine habit. Although this fact does not automatically make him a drug dealer, it does make him familiar with the drug and provides incentive to obtain extra money to support his family's addiction. Moreover, it is logical to assume drug dealing would provide the dealer-user with a ready supply on hand for his personal needs. The bulk of the evidence showed defendant was familiar with the drug milieu and was predisposed to sell and deliver cocaine.

Second, the record reflects defendant went to Aurora, Illinois, to purchase one ounce of cocaine per week. Defendant denies he personally bought drugs in Aurora, contending only Konrad participated in the transactions. However, Konrad testified at trial as follows:

"Q. Did Joseph Schillaci ever give you money to go to Aurora to get cocaine?

A. Many times.

Q. In what types of quantities?

A. Half ounce. I would go and get him a half ounce about once a week from November of '85 until January of '86. It was a regular weekly thing. He would give me $1,100.00 and I would go get the cocaine and bring it back and he would usually give me a gram of cocaine for going and doing that."

Konrad said Dunlap bought cocaine from other sources as well.

Defendant asks this court to disregard the above colloquy because Konrad is a convicted felon who testified as part of a plea bargain agreement. The plea agreement did not insure his testimony would be favorable to the State, nor did it automatically make him a less than credible witness. The jury was in the best position to compare the credibility of the defendant and Konrad at trial. We will not substitute our judgment on appeal. *People v. Foster* (1979), 76 Ill. 2d 365, 392 N.E.2d 6.

The fact defendant could have but did not withdraw from the October 16 delivery when he suspected Dunlap was involved with the police is further evidence of his predisposition to sell cocaine. Dunlap testified he had the following conversation with defendant:

"Q. What was the nature of the conversation?

A. He told me he thought I was setting him up, he thought I was [a] federal agent or a government agent or something in that manner.

\* \* \*

Q. Then what happened?

A. He told me two cars were following us or watching. \*\*\* [H]e pointed out a brown Oldsmobile and he asked if I was a government or DCI agent or a federal.

Q. What did you tell him?

A. No.

Q. Why did you tell him that?

\* \* \*

A. He was paranoid. He told me if I was an agent or setting him up, he would have me knocked off by his friends in Chicago or Aurora.

\* \* \*

A. He told me he had my number or the mob people had my number and he knew I had a family. I told him I just didn't need this crap at all, to stop the truck and get out and I will keep my money and you could keep the dope. He automatically said 'give me the money.' "

Defendant's reply brief fails to refute this damaging evidence of predisposition. Defendant's version of the conversation was that he asked Dunlap: "Are you an agent?" and Dunlap replied: "No, man, I am a doper." Even though the testimony conflicts, it is clear defendant had ample opportunity to withdraw from the deal. Instead, he proceeded with the transaction in spite of his fear of government involvement.

Whether defendant was unlawfully entrapped into selling cocaine

to a government agent was a question for the jury. This court will not reverse the conviction unless the evidence was so improbable that it raises a reasonable doubt of guilt. (*People v. Norks* (1985), 137 Ill. App. 3d 1078, 484 N.E.2d 1261.) In affirming defendant's conviction, we find the State's evidence defeated the entrapment defense beyond a reasonable doubt.

■ The defendant next asserts that, notwithstanding his predisposition, his conviction must be reversed because the government's conduct in connection with his arrest and conviction was so outrageous as to amount to a violation of due process of law. (*United States v. Russell* (1973), 411 U.S. 423, 36 L. Ed. 2d 366, 93 S. Ct. 1637.) Specifically, defendant contends it was outrageous for the State to employ Dunlap as an active DCI informant when Dunlap, by his own admission, was using controlled substances while he was on the State payroll. The record indicates Dunlap also used prescription narcotics, almost to the point of abuse, and that he offered these pills to several of the testifying witnesses.

Dunlap admitted he used drugs with suspects while acting as an informant, but he explained that he did so only to maintain his cover. According to defendant, Dunlap was not sufficiently monitored by his supervising State agents. Defendant testified that on each of the deliveries to Dunlap the latter kept a bag of pure cocaine for himself and gave cut, impure cocaine to the DCI agents. Defendant infers Dunlap made a profit on the transactions. However, the agents testified they searched Dunlap before and after each delivery and found no narcotics on his person. Defendant said Dunlap put his personal stash in his crotch, where it would remain undetected.

Defendant argues the State's conduct is analogous to cases in which the prosecutor knowingly allowed false testimony to stand uncorrected (*People v. Tidwell* (1980), 88 Ill. App. 3d 808, 410 N.E.2d 1163; *People v. Martin* (1974), 56 Ill. 2d 322, 307 N.E.2d 388) and to cases of investigative misconduct (*United States v. Twigg* (3d Cir. 1978), 588 F.2d 373). In *Tidwell*, the court held a prosecutor's deliberate failure to correct his witnesses' false testimony in a robbery case violated due process when the State's case was largely dependent upon the credibility of its witnesses. The prosecution in *Martin* was charged with the knowledge of its agents; therefore, it was fundamentally unfair for those agents to present false testimony even if the falsity was unknown to the State.

*Twigg* involved a "speed" manufacturing laboratory which was under substantial control of the government. The government supplied 20% of the glassware and an essential ingredient of the narcotic. The

defendant was unaware of how to manufacture speed and was not actively engaged in drug sales. The court found the government's conduct to be outrageous and contrary to fundamental fairness.

The outrageous nature of the government's conduct in the cited cases is what distinguishes them from this case. Here the State did not condone or facilitate Dunlap's conduct. Dunlap testified his superior made it clear he was not to use drugs while acting as a DCI informant. He violated those orders to avoid suspicion and to protect his life while in the drug underworld. Although the State paid Dunlap and provided the bait money for the drug transactions, it was not enmeshed in the details of the drug business.

Unfortunately it is necessary to recruit less than model citizens as informants in order to investigate drug trafficking. Despite Dunlap's unsavory reputation, there is no conclusive evidence he gave false testimony or made illegal drug money profits. We find no denial of due process.

■ The defendant next requests this court remand his case for a new trial because the State failed to disclose exculpatory information in violation of Supreme Court Rule 412(c) (107 Ill. 2d R. 412(c)). Defendant alleges the State withheld information about Dunlap's drug use which would have assisted the defense's case.

In *Brady v. Maryland* (1963), 373 U.S. 83, 10 L. Ed. 2d 215, 83 S. Ct. 1194, the Supreme Court held that "the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." (*Brady*, 373 U.S. at 87, 10 L. Ed. 2d at 218, 83 S. Ct. 1196-97.) Rule 412(c) requires that all *Brady* information must be provided pretrial. (*People v. Elston* (1977), 46 Ill. App. 3d 103, 360 N.E.2d 518.) To establish a *Brady* violation, the defendant must show (1) that evidence which actually existed (2) in the possession of the prosecution (3) was "favorable" to defendant and (4) the prosecutor failed to disclose the evidence in response to a specific request. *In re Hatfield* (1979), 72 Ill. App. 3d 249, 390 N.E.2d 453.

■ The constitution does not require the prosecutor to disclose his entire file to a defendant. (*United States v. Agurs* (1976), 427 U.S. 97, 49 L. Ed. 2d 342, 96 S. Ct. 2392.) However, due process requires, among other things, disclosure of impeachment evidence which questions the credibility of a government informant. (*Hatfield*, 72 Ill. App. 3d 249, 390 N.E.2d 453.) Such evidence is favorable to the defense to the extent it reflects adversely upon the credibility of the informant. (*People v. Dixon* (1974), 19 Ill. App. 3d 683, 312 N.E.2d 390.) In

*Dixon,* this court held a statement given by a witness to the police, but not disclosed to defendant, was favorable to the defendant and therefore discoverable under *Brady* and Rule 412(c), because it was in direct conflict with a statement given by the State's sole witness.

Defendant's pretrial motion to dismiss on the grounds the State had interviewed witnesses in its investigation of Dunlap's illegal drug activities, but failed to disclose the names of the interviewees, was denied. Defendant also unsuccessfully requested a pretrial evidentiary hearing to prove the State knew its confidential source was using, possessing and dispensing illegal drugs during his employ with the State. The trial court ruled the State was not required to judge the credibility of its own informant and then disclose its findings to defendant. It was not necessary to hold an evidentiary hearing to, in effect, try Dunlap. On appeal, defendant claims had the State complied with discovery, he could have obtained corroborative evidence to bolster his defense and defeated Dunlap's credibility with information from the people the State had interviewed regarding Dunlap's illegal conduct.

The State contends no discovery violation occurred and no new trial is warranted. Relying on *People v. Norks* (1985), 137 Ill. App. 3d 1078, 484 N.E.2d 1261, the State argues it was not required to summarize discussions with people the prosecution did not plan to call as witnesses. In *Norks,* the content of a pretrial conversation between the State's Attorney and the confidential informant was not subject to disclosure under Rule 412(a)(i) because the State did not intend to call the informant as a witness at trial. (107 Ill. 2d R. 412(a)(i).) Similarly, the people the State interviewed and those with whom Dunlap said he had ingested cocaine were not listed as potential State witnesses, were not called at trial and therefore were not discoverable.

The defendant in *Norks* was not prejudiced by the State's failure to disclose the requested information because he had independent knowledge of the informant's involvement in the case before trial. Although the State in this case did not reveal the details of Dunlap's activities, the defense knew the identity of the informant before trial, knew he was a drug user and had ample opportunity to interview and investigate him.

■ Whether the alleged error impinged on the defendant's constitutional right to disclosure depends on whether the information might have materially aided the defense or affected the outcome of the trial. A determination of whether defendant was prejudiced depends on "the closeness of the evidence, and the likelihood that prior notice could have helped the defense discredit the evidence." *People v. Cisewski* (1987), 118 Ill. 2d 163, 514 N.E.2d 970.

We do not believe defendant suffered sufficient prejudice to justify a reversal of his conviction. Even though the fruits of the State's investigation may have provided defendant with more sources to impeach Dunlap's credibility as a witness, the record is already replete with evidence that Dunlap was an active member of the drug community. The defendant has failed to demonstrate how his pretrial knowledge of the nondisclosed information would have altered his trial strategy or changed the outcome of this case.

Next, defendant maintains the issue of his drug rehabilitation immediately following the October 16 delivery was relevant both to his credibility and to the issue of predisposition. It was therefore error for the trial court to preclude such evidence via a motion *in limine*.

In *People v. Tipton* (1980), 78 Ill. 2d 477, 401 N.E.2d 528, the supreme court held that evidence of the defendant's subsequent activities is admissible when the defendant pleads the defense of entrapment. The subsequent acts must be relevant to the issue of predisposition and "relevancy is measured in terms of similarity and proximity in time." (*Tipton*, 78 Ill. 2d at 485, 401 N.E.2d at 532.) Defendant argues he should have been allowed to testify to his immediate efforts to seek drug rehabilitation following the October 16 delivery in order to bolster his credibility and to counter the State's claim he was predisposed to deliver cocaine. Such evidence is arguably relevant, but is so marginal in value that it was not error to preclude its admission.

For the first time on appeal, the defendant finds fault with the following remarks made by the prosecutor during closing argument:

"Even if by some reason you believe that on October 2 Joe Schillaci was entrapped, how can you be entrapped twice? Even after that first time now wasn't he predisposed to sell? He sold on October 2. On October 16 can you say he was not predisposed to sell? He had already done it before."

Following deliberations, the jury found defendant not guilty of the October 2 delivery by reason of entrapment, but guilty as charged of the October 16 delivery.

It is well settled a prosecutor's misstatement of the law in closing argument can be grounds for reversal. (*People v. Eckhardt* (1984), 124 Ill. App. 3d 1041, 465 N.E.2d 107; *People v. Crossno* (1981), 93 Ill. App. 3d 808, 417 N.E.2d 827.) Whether the prosecutor's remarks constitute reversible error depends on if the jury would have reached a different result if the comments had not been made. *People v. Barnes* (1983), 117 Ill. App. 3d 965, 976, 453 N.E.2d 1371, 1381.

Defendant argues the waiver rule does not apply because the re-

marks were plain error because the prosecutor misstated the law of entrapment. (*People v. Szabo* (1983), 94 Ill. 2d 327, 447 N.E.2d 193; *Barnes*, 117 Ill. App. 3d 965, 453 N.E.2d 1371.) Relying on *People v. Estrada* (1980), 91 Ill. App. 3d 228, 414 N.E.2d 512, defendant maintains a previous drug sale does not constitute predisposition as a matter of law; rather, it is a question for the jury.

In *Estrada*, the trial court found entrapment did not exist as a matter of law, and therefore refused to instruct the jury on that defense. The trial court held the defendant's history of prior deliveries of heroin to a police informant was determinative of the issue of predisposition. The appellate court reversed, holding the prior deliveries did not establish predisposition as a matter of law under the particular facts of that case. In *Estrada*, the informant asked defendant to supply her with heroin over a period of time during which they were lovers. The court refused to consider the last deliveries of heroin in isolation. The latter deliveries were held to be part of a course of conduct which was the product of the inducement, not independent acts subsequent to the inducement.

The *Estrada* holding is fact specific. It does not infer a prior illegal drug sale can never constitute evidence of predisposition. In this case, defendant's prior delivery on October 2 is not critical to our consideration of his conviction on the October 16 delivery. The evidence shows defendant was predisposed to deal illegal drugs. According to the facts, the informant, Dunlap, was not the only person with whom defendant bought, sold and used drugs. Defendant was familiar with the business and had a ready supply of cocaine at his disposal.

Moreover, the jury here, unlike in *Estrada*, was instructed on the entrapment defense as to both deliveries. The jury was told to consider only evidence derived from the testimony and the trial court stipulated that closing arguments of counsel were not evidence.

It is clear the law regards defense counsel's failure to object to the prosecutor's remarks during closing arguments as a waiver of his right to raise this issue on appeal. (*People v. Ellis* (1985), 134 Ill. App. 3d 924, 481 N.E.2d 320.) Even assuming the issue had been preserved, we do not find the comments were prejudicial. The prosecutor's comments did not constitute reversible error in light of the State's evidence rebutting defendant's entrapment defense for the October 16, 1986, delivery.

Next, defendant maintains the following remarks by the trial judge warrant a review of his sentence:

"Mr. Schillaci and his wife, I believe the evidence is clear, supported their own extremely expensive drug habit, doing what

people with extremely expensive drug habits do by selling drugs. *** It is clear in this case Mr. Schillaci had been dealing drugs for some time. Whether it was sales at Big Dad's or people that came to the home, whether it was trips north to Aurora or trips to Flanagan to see some other people. We had testimony concerning a variety of sales in this case."

Defendant concludes the remarks indicate the trial judge considered improper factors in sentencing and the court intended to punish defendant for the jury's acquittal. (*People v. Vaughn* (1978), 56 Ill. App. 3d 700, 371 N.E.2d 1248.) We disagree.

The sentence imposed by a trial court will not be altered on review absent substantial error or abuse of discretion. 87 Ill. 2d R. 615; *People v. Cox* (1980), 82 Ill. 2d 268, 412 N.E.2d 541; *People v. Perruquet* (1977), 68 Ill. 2d 149, 368 N.E.2d 882.

Defendant was convicted of unlawful delivery of not less than 10 and no more than 30 grams of cocaine, a Class 1 felony. (Ill. Rev. Stat., 1986 Supp., ch. 56½, par. 1401(b)(2).) At the time defendant committed the crime it carried a minimum sentence of four years and a maximum of 15 years in the Department of Corrections, or probation as an alternative. Defendant received the minimum penitentiary sentence under the statute.

In sentencing defendant, the trial judge said he was considering only the evidence at trial. The court noted defendant's previous record, expressed doubt defendant would commit another crime, and predicted defendant would comply with the terms of probation. The court concluded:

"I consider the nature of this offense is one in which probation would deprecate the seriousness of the conduct involved and be inconsistent with the ends of justice, and having due regard for the character of Mr. Schillaci, the nature and circumstances of the offense and the public interest finds that a sentence of imprisonment is the most appropriate disposition.

[The State] has asked for six years. Six years is a term contemplated within the statute. However, I believe that a term of four years is more appropriate considering Mr. Schillaci's background. That will give him an opportunity and society an opportunity to be free and clear of each other for awhile."

We find the trial court properly exercised its discretion in denying defendant probation and there is no evidence the denial was to punish him for the jury's partial acquittal.

■■ Defendant also requests resentencing for the trial court's failure to seriously consider his drug rehabilitation as a mitigating factor.

According to defendant, there was ample evidence for the court to conclude he had been rehabilitated from his cocaine addiction and was once more a drug-free, law-abiding citizen. The defense presented evidence at the sentencing hearing that suggested defendant had undergone drug rehabilitation and was now a born-again Christian. Defendant contends it is not possible to determine the effect of the court's failure to consider these factors had on his sentence. Accordingly, he asks the sentence be vacated and the cause remanded for resentencing. *People v. Bourke* (1983), 96 Ill. 2d 327, 449 N.E.2d 1338; *People v. Conover* (1981), 84 Ill. 2d 400, 419 N.E.2d 906.

The record indicates defendant did not complete any of the detoxification programs he entered in October and November of 1986, and by his own admission, defendant had last used cocaine as late as November 1986. This evidence casts grave doubt on the permanency of defendant's rehabilitation and the trial judge was entitled to weigh it accordingly. We find the trial court did not abuse its discretion in sentencing defendant.

In addition to the four-year prison sentence, defendant was fined $1,100 for the street value of the cocaine and ordered to pay an additional fine of $5,000. Defendant's final contention is that the imposition by the trial court of the $5,000 discretionary fine must be vacated because the court failed to consider his ability to pay the fine. Ill. Rev. Stat. 1985, ch. 56½, par. 1411.1(b)(1).

Section 411.1 provides that a discretionary fine may be imposed by the court in addition to any other penalty imposed for defendant's violation of the Illinois Controlled Substances Act (Ill. Rev. Stat. 1985, ch. 56½, par. 1100 *et seq.*). In determining whether to impose a fine and the amount, the statute requires that "the court shall (1) consider the defendant's income, regardless of source, the defendant's earning capacity and the defendant's financial resources, as well as the nature of the burden the fine will impose on the defendant and any person legally or financially dependent upon the defendant." Ill. Rev. Stat. 1985, ch. 56½, par. 1411.1(b)(1).

Defendant argues the trial court failed to make an explicit determination he had the financial resources and the future ability to pay the fine. Such a determination is not necessary if the trial court is aware of facts in the record supporting the conclusion the defendant is able to afford the fine. (*People v. Morrison* (1983), 111 Ill. App. 3d 997, 444 N.E.2d 1144; *People v. Bishop* (1980), 81 Ill. App. 3d 521, 401 N.E.2d 648.) However, the record in this case is devoid of any evidence of defendant's financial ability to comply with the court's order.

After a review of the listing of defendant's assets and liabilities,

we conclude the discretionary fine was extreme. Defendant is responsible for the financial well-being of six dependents. There are liens attached to all his possessions including his home, household furnishings and automobiles, and his cash assets are insufficient to release him from debt. The record shows the $2,500 bond posted by defendant substantially depleted his savings account, and he has substantial child support and attorney fee obligations.

Section 411.1 also provides that in imposing a fine the trial court shall:

"(2) [C]onsider the proof received at trial *** concerning the full street value of the controlled substances seized and any profits or other proceeds derived by the defendant from the violation of this Act." Ill. Rev. Stat. 1985, ch. 56½, par. 1411.1(b)(2).

The trial court established the street value of the cocaine was $1,100. There is no firm evidence defendant acquired assets by selling cocaine. Accordingly we hold the discretionary fine in the amount of $5,000 was unfounded in this case.

Under the power contained in Supreme Court Rule 615(b)(4) (107 Ill. 2d R. 615(b)(4)), we reduce the total fine imposed by the trial court to $1,100. The judgment of the circuit court of Livingston County is affirmed on all other grounds.

Affirmed as modified.

GREEN, P.J., and McCULLOUGH, J., concur.