THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. ANTHONY KENNEDY, Defendant-Appellant.

First District (3rd Division) No. 1—87—3361

Opinion filed November 15, 1989.

Randolph N. Stone, Public Defender, of Chicago (Ruth A. McBeth, Assistant Public Defender, of counsel), for appellant.

Cecil A. Partee, State's Attorney, of Chicago (Inge Fryklund, Gael O'Brien, and Toi Denise Houston, Assistant State's Attorneys, of counsel), for the People.

JUSTICE WHITE delivered the opinion of the court:

Following a bench trial in the circuit court of Cook County, Illinois, defendant, Anthony Kennedy, was found guilty of possession of a stolen motor vehicle and sentenced to a term of four years of imprisonment. Defendant prosecutes this appeal seeking to reverse his conviction and sentence. He contends that: (1) he was denied a fair trial because the trial judge was biased and considered matters outside the record; and (2) he was not proven guilty beyond a reasonable doubt.[1] We reverse and remand for a new trial.

The facts adduced at trial follow.

Loretta Henderson testified that she and her husband are the lessees of a 1987 Cadillac Seville with Illinois license plate PWA 175. At approximately 4:30 p.m. on January 27, 1987, she parked the

---

[1]An issue raised by defendant regarding the constitutionality of section 4—103 of the Illinois Vehicle Code (Ill. Rev. Stat. 1987, ch. 95½, par. 4—103) has been abandoned in light of our supreme court's opinion upholding the validity of the statute. *People v. Bryant* (1989), 128 Ill. 2d 448.

Cadillac in front of her house, which is located at 2007 West 67th Place, in Chicago. The Cadillac remained parked in front of the house at 11 p.m. that evening. The next day, she recovered the automobile from the police pound. The steering wheel had been torn out, the hood and the trunk had been damaged, and the seats, radio, lights and doors on the driver's side had been removed. Ms. Henderson testified that neither she nor her husband gave anyone permission to remove the Cadillac. Ms. Henderson further testified that it was in good condition on January 27, 1987.

Officer Joseph Avila of the Chicago police department testified that at approximately 12:45 a.m. on January 28, 1987, he and his partner, Lynn Garmon, were patrolling the area near 65th and Seeley Streets in Chicago when they observed a Cadillac Seville with Illinois license plate PWA 175. The driver of the Cadillac, whom Officer Avila identified as defendant, looked toward the police officers and drove off. The officers followed the Cadillac to 65th and Damen Streets, where Officer Avila observed that the window on the passenger side was broken. He activated the lights on the police car, and defendant drove off at a high rate of speed. The officers followed it to an alley near 68th and Justine Streets, where the Cadillac came to a stop after hitting a tree trunk, a fence, and several vehicles. The officers pulled alongside, and Officer Avila observed defendant's face by the interior light of the Cadillac. Defendant first tried unsuccessfully to get out of the car by the door on the driver's side. He then exited by the door on the passenger's side and ran off with the officers in pursuit. While running, defendant removed his jacket and threw it on the ground. The officers caught defendant approximately one block from the alley after a chase which lasted three minutes.

Officer Avila testified that he then returned to the alley and inspected the Cadillac. He observed that the steering column was broken and recovered a screwdriver from the car. The radio and seats had not been removed.

Officer Avila also testified that he advised defendant of his constitutional rights, and defendant then told him that he had taken the Cadillac so that he could sell the tires and feed his children. Officer Avila's police report does not contain any reference to this statement.

Yolanda Martin testified for the defense. On January 28, 1987, she lived in an apartment at 6811 South Justine Street with her children, her boyfriend, Cindy Simmons, Ms. Simmons' children, Ms. Simmons' boyfriend, and defendant. Defendant left the apartment at approximately 1 a.m. that day. On cross-examination, Ms. Martin tes-

tified that defendant left the apartment "around midnight, something like that."

Ms. Simmons also testified for the defense. On January 28, 1987, she was in the apartment on Justine Street along with defendant. Defendant left the apartment at 1 a.m. She knew the time when defendant left the apartment because of a certain movie that she was watching.

Defendant testified that at approximately 1 a.m. on January 28, 1987, he left his apartment to go to a store on 69th and Ashland Streets. On the way to the store, he was approached by a person who he thought was about to hit him. He later learned that the person was a police officer. Defendant testified that he ran across the street to avoid being hit and he was then arrested by several police officers. Defendant stated that he did not steal the 1987 Cadillac and he did not tell any police officer that he had stolen the Cadillac.

In rebuttal, Officer Lynn Garmon testified that he was able to see defendant's face by the interior light of the Cadillac and that he did not lose sight of defendant during the chase. Officer Garmon also testified that he heard defendant tell Officer Avila that he had stolen the Cadillac. On cross-examination, Officer Garmon testified that defendant discarded his jacket during the chase to elude capture. The chase lasted from three to five minutes, and defendant was arrested two blocks from the Cadillac.

OPINION

 We turn now to defendant's contention that he was denied a fair trial because the trial judge was biased and considered matters outside of the record. In *People v. McDaniels* (1986), 144 Ill. App. 3d 459, 494 N.E.2d 1275, we examined a defendant's claim that he had not been afforded a fair trial. We stated:

"The right of a defendant to an unbiased, open-minded trier of fact is so fundamental to our system of jurisprudence that it should not require either citation or explanation. It is rooted in the constitutional guaranty of due process of law (see *People v. Diaz* (1971), 1 Ill. App. 3d 988, 992, 275 N.E.2d 210, 212), and entitles a defendant to a fair and impartial trial before a court 'which proceeds not arbitrarily or capriciously, but upon inquiry, and renders judgment only after trial' (*City of Chicago v. Cohn* (1927), 326 Ill. 372, 374, 158 N.E. 118, 120). *** These standards of impartiality apply to both judges and juries; one does not waive his right to an impartial trial by waiving his right to a jury. (*People v. Diaz* (1971), 1 Ill. App.

3d 988, 993, 275 N.E.2d 210, 213.) If this most basic and fundamental right is not afforded a defendant during trial, that defendant had been denied due process of law and is entitled to a new trial. *People v. Diaz* (1971), 1 Ill. App. 3d 988, 993, 275 N.E.2d 210, 213." (144 Ill. App. 3d at 462.)

In the instant case, the record supports defendant's contention that the trial judge was biased and considered matters outside of the record. At the close of the evidence, the trial judge remarked:

"If I believed anything that the two female witnesses testified—quite frankly, I think what we have is a whole family of thieves living together pooling their resources, that the women get up in the morning and go out and steal, and the men get up in the morning and they go out and steal and they take care of their necessities of food and drink and also narcotics based on this communal living together.

\* \* \*

They have children together. They live as a family together and they wake up every morning wondering how they are going to get enough drugs for the family.

\* \* \*

They come in here and they are—everyone is dressed in black leather. We have black leather hats. Everyone got those at a fire sale, I'm sure. And they parade up here and they ask me to believe something I wouldn't believe based on the rest of the testimony. My common and everyday experiences in life and my experiences in this building indicate to me that what they told to the Court is a boldface lie, and that they would lie for this gentleman to save their family structure.

The family structure I believe in this particular case is a group of people that band together to commit crime every day of their lives. If you want to disprove that, then call them back and let me hear about their jobs that they have every day. But I guarantee you that everyone that you had testify is on public aid, the children are being paid for by the State, that none of these children are born in wedlock. You have families banded together with three or four children born out of wedlock, sleeping together in a basement, pooling their expenses to pay the rent.

And every day of their life [*sic*], the women get up and go shoplifting, somebody stays home and babysits, I hope, and the men or the male part of this community go out at night. They stay home all day and drink and go out at night and pick up a

car or some tires just as the defendant indicated to the police."

The trial judge classified the defense witnesses as thieves, drug addicts, fornicators and welfare recipients. However, nothing in the record supports these classifications. The trial judge must have guessed from the witnesses' clothing and mien that they were thieves, drug users, welfare recipients and fornicators. Alternatively, he must have relied on information outside of the record in evaluating the witnesses. The trial judge also seemed unwilling to believe the testimony of the defense witnesses because of their living arrangements and employment status. The defense witnesses apparently lacked credibility because the trial judge believed that they were unemployed drug addicts and welfare recipients. Also, the witnesses lacked credibility because the trial judge believed that their children were born out of wedlock. We are of the opinion that the trial judge harbored preconceived notions regarding the veracity of the defense witnesses which led him to reject defendant's alibi defense without due consideration. We also believe that defendant was not afforded a fair and impartial trial.

■ The State attempts to justify the trial judge's comments by arguing that the trial judge was merely expressing disbelief of the testimony given by the defense witnesses. Citing *People v. Abrams* (1974), 21 Ill. App. 3d 734, 316 N.E.2d 5, the State explains that a trial judge's comment as to the credibility of the witnesses after the evidence has been presented does not reveal prejudice or bias requiring reversal, but amounts to an explicit statement of that which would have been implicit in a finding of guilt. We agree with the State's contention that, at the close of the evidence, a trial judge may comment upon the credibility of the witnesses. However, we cannot agree with the State that here the trial judge was merely commenting upon the credibility of the defense witnesses. The trial judge was not evaluating the testimony and demeanor of the defense witnesses at trial. Rather, the trial judge had certain preconceived notions regarding people who wear leather coats, live together, are unemployed and on welfare. These notions made him unwilling to believe the testimony of the defense witnesses. The trial judge also relied on matters outside the record or on guesswork in assessing the veracity of the witnesses. We believe that the trial judge's remarks evince bias against the defense witnesses and demonstrate that defendant was not judged by an impartial, open-minded trier of fact.

We conclude that defendant did not receive a fair trial and that this cause should be remanded for a new trial.

■ Pursuant to *People v. Taylor* (1979), 76 Ill. 2d 289, 391 N.E.2d 366, we are required to consider defendant's contention that he was not proven guilty beyond a reasonable doubt. We have reviewed the record and noted certain inconsistencies in the evidence proffered by the State.[2] However, we believe that the record contains sufficient evidence, which if believed, proves defendant guilty of possession of a stolen motor vehicle. The record shows that Officers Avila and Garmon observed defendant driving the Cadillac. The officers activated the light on the police car, and defendant sped off at a high rate of speed. The officers followed defendant to an alley where defendant abandoned the Cadillac and fled on foot. The officers chased defendant and caught him within one or two blocks. The record also shows that defendant did not have permission from the Hendersons to remove the Cadillac from its parking spot. Based upon this record, a rational trier of fact could have found that all essential elements of possession of a stolen motor vehicle had been proven beyond a reasonable doubt.

We reject defendant's contention that the evidence was insufficient to prove his guilt beyond a reasonable doubt. Our holding, of course, is in no way binding on retrial. *People v. Taylor*, 76 Ill. 2d at 310.

Reversed and remanded.

FREEMAN, P.J., and CERDA, J., concur.

---

[2]For example, Officer Avila testified that defendant confessed that he had stolen the Cadillac to obtain money to feed his children. However, Officer Avila's police report does not contain any reference to defendant's confession. Moreover, the police report indicates that defendant does not have any dependent children at home. The presentence investigation report confirms that defendant does not have any children.