THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v.
TYRONE WHITE, Defendant-Appellant.

First District (2nd Division)   No. 1—92—3416

Opinion filed June 29, 1993.

Allan A. Ackerman, Joelle H. Hollander, and Neil H. Cohen, all of Chicago, for appellant.

Jack O'Malley, State's Attorney, of Chicago (Renee Goldfarb, William D. Carroll, and William L. Toffenetti, Assistant State's Attorneys, of counsel), for the People.

JUSTICE HARTMAN delivered the opinion of the court:

Defendant, Tyrone White, appeals his conviction on two counts of delivery of cocaine (Ill. Rev. Stat. 1989, ch. 56½, par. 1401(a)(2)(A) (now 720 ILCS 570/401(a)(2)(A) (West 1992))), for which he was sentenced to two, concurrent six-year terms of imprisonment. Defendant presents as issues for review whether (1) the circuit court prejudged the case or acted as an advocate for the prosecution, (2) he was denied his right to effective assistance of counsel, and (3) he was entrapped as a matter of law. We affirm.

Chicago police officer Steven Haras testified that defendant delivered cocaine to Haras on three separate days as he was working undercover in February 1990. On February 21, defendant called Haras' pager. Haras returned the call and told defendant that he wanted to purchase one ounce of cocaine. Defendant later called back with a price, $1,150, and they agreed to meet. When Haras arrived at 32nd and King Drive, defendant entered Haras' car and told him to drive to an apartment building located at 401 East 32nd Street. Defendant exited the car and went inside. Five minutes later, defendant returned. He handed Haras a clear plastic bag containing white powder in exchange for $1,150 in cash. The bag contained 25.9 grams of cocaine.

On February 27, defendant called Haras' pager. They agreed to meet at the same place and exchange two ounces of cocaine for $2,150. When Haras arrived, defendant exited his car and entered Haras' car. They drove to the same apartment building. Defendant went inside, returned, and handed Haras a bag in exchange for $1,100. Defendant then reentered the building, returned with a second bag, and handed it to Haras in exchange for $1,050. The two bags contained a total of 51.08 grams of cocaine.

On cross-examination, Haras testified that Steven Skolnick, an informer brought to the Chicago police department by State's Attorney

investigators, introduced him to defendant on February 7 at an apartment on 52nd and Drexel. Haras gave defendant $350. Defendant went into a bedroom and returned with cocaine, which he gave to Haras. Haras had no knowledge of what Skolnick said to defendant to persuade him to deliver cocaine.

Defendant testified that he first met Skolnick in 1985 when they worked together. They became friends and often socialized after work. Skolnick sold marijuana and cocaine. At first, Skolnick gave defendant drugs to use. Later, defendant purchased cocaine from Skolnick for personal use. They were "very good friends." Defendant was addicted to cocaine at that time.

In 1987 Skolnick was severely injured in a motorcycle accident. He was in a full-body cast, had damaged vision, and slurred his speech. Skolnick's live-in help sold drugs for him. Defendant was still purchasing drugs from Skolnick in 1988. Skolnick was defendant's only source of supply. Defendant gave up drugs in September 1988 and no longer saw Skolnick.

In October 1989, Skolnick called defendant, claiming to be behind in his bills and unable to work because of his injuries. Skolnick asked defendant if he knew someone who could supply him with drugs. Defendant refused to get involved.

Skolnick called defendant five or six times per month for the next four or five months. He left messages with defendant's wife and on the answering machine. Skolnick reached defendant on the telephone on or about December 26. Skolnick told defendant that things were worse and asked why defendant had not returned his calls. Defendant again refused to get involved.

On New Year's Eve, defendant stopped by a party at the invitation of a woman named Cheryl. Floyd, the host, was supplying drugs to the guests. Defendant soon left. On February 2, 1990, Skolnick reached defendant on the telephone again. He said he barely had money for food and was disappointed in defendant as a friend. Defendant then told Skolnick about Cheryl and agreed to call her. Defendant agreed to call Cheryl because of Skolnick's constant calling; his wife "automatically assumed" that he may be doing drugs again because Skolnick, a known drug dealer, continued calling him as he had done in the past when defendant owed him money.

Through Cheryl, defendant contacted Floyd. A meeting was arranged for February 7 at an apartment on 52nd and Drexel. Defendant waited outside for Skolnick, who arrived with Haras. Once in the apartment, Floyd remained in the bedroom and refused to meet Skolnick because Haras was with him. Skolnick gave defendant the

money, which defendant took into the bedroom and gave to Floyd. Floyd gave defendant the cocaine, which he in turn gave to Skolnick. Defendant was not paid for this service.

Another meeting was set for February 21. Floyd told defendant to act as the middle man, bringing the money up and the drugs back down. Skolnick said he was unable to come because of his health. Defendant met Haras, who gave him $1,150. Defendant took the money to Floyd and carried the drugs down to Haras. He received no payment for this. On February 27, at Skolnick's request, the transaction was repeated for twice the amount.

Later, Skolnick called defendant and requested him to obtain seven ounces. Skolnick offered to give defendant two ounces to set him up as a drug seller for Skolnick. Defendant refused and told him to quit calling. Haras called defendant one month later and repeated the same offer, which defendant again refused. Subsequently, defendant was arrested.

Defendant's wife testified and corroborated defendant's testimony as to the frequency of Skolnick's telephone calls.

Sylvester Davis testified that he was present at the February 7 exchange. When he asked defendant "what was going on," defendant said he was helping his friend Skolnick, who was in trouble.

I

Defendant initially contends that the circuit court prejudged the case and acted as an advocate for the prosecution.

The State counters that defendant waived review of these issues. The application of the waiver rule is less rigid where the basis for the objection is the circuit judge's conduct, as here. (*People v. Davilla* (1992), 236 Ill. App. 3d 367, 379, 603 N.E.2d 666.) Therefore, we review these issues on their merits.

Defendant claims that the circuit court improperly prejudged his case because, during defense counsel's opening statement, the court asked: "You're sure this is not a jury trial?"

Prejudgment is the antithesis of a fair trial. (*People v. Diaz* (1971), 1 Ill. App. 3d 988, 992, 275 N.E.2d 210.) A fair and impartial trial is a judicial process by which a court hears before it decides; by which it conducts a dispassionate inquiry and renders judgment only after receiving evidence. *Diaz*, 1 Ill. App. 3d at 992.

The court's question, quoted above, does not demonstrate any prejudgment, but merely indicates the court's willingness to let defendant reconsider his jury waiver. This case is unlike *People v. Kennedy* (1989), 191 Ill. App. 3d 86, 547 N.E.2d 634, cited by defendant, be-

cause there the court improperly considered matters outside the record and expressed several preconceived notions about the defense witnesses. Also unlike this case is *Diaz* (1 Ill. App. 3d 988, 275 N.E.2d 210), because there the court improperly made premature findings of guilt. We are not persuaded that the circuit court prejudged defendant's case.

Defendant submits that the circuit court abandoned its role as an impartial tribunal and assumed that of a prosecutor.

Following defendant's wife's cross-examination by the State, the court, *sua sponte*, made the following inquiry of her:

> "Prior to the October phone calls, getting back to 1986 when [Skolnick] would call, did you know at that time that your husband was using drugs and that the calls were for payment of drugs that had been advanced?"

Defendant's wife answered in the negative. During closing argument, defense counsel stated that the testimony of defendant and his wife was uncontradicted and unimpeached. The court challenged this conclusion, insisting that the wife's answer to the court's question constituted impeachment because she denied any knowledge of defendant's drug use and monies he owed to Skolnick. Defendant argues that there is simply no way to separate the court's "interrogation" of his wife from the court's finding of guilty.

A circuit court is free to examine witnesses in its discretion, provided it does not become an advocate, thereby abandoning its function as an impartial tribunal. (*People v. Griffin* (1990), 194 Ill. App. 3d 286, 296, 550 N.E.2d 1244.) The court may be justified in making such inquiries as a seeker of the truth. (*People v. Trefonas* (1956), 9 Ill. 2d 92, 100, 136 N.E.2d 817.) The danger of prejudice due to judicial questioning decreases sharply in cases tried without a jury, as here. (*Griffin*, 194 Ill. App. 3d at 296.) The relevant inquiry in a non-jury trial is whether the tenor of the court's questioning indicates that the court has prejudged the outcome before hearing all the evidence. *Griffin*, 194 Ill. App. 3d at 296.

In the present case, the court's single question to defendant's wife was neutral in tone: if she had answered affirmatively rather than negatively, defendant's credibility would have been bolstered rather than marred. Consequently, the tenor of the court's question shows no prejudgment. We conclude that the circuit court did not abandon its role as an impartial tribunal and assume that of a prosecutor.

## II

Defendant next alleges that he was denied his right to effective assistance of counsel.

Ineffective assistance of counsel requires a defendant to show that (1) his defense counsel's performance was deficient by identifying specific acts or omissions of counsel that, in the light of all the circumstances, were outside the range of professionally competent counsel; and (2) but for defense counsel's deficient performance, the outcome would have been different. *Strickland v. Washington* (1984), 466 U.S. 668, 687-94, 80 L. Ed. 2d 674, 693-97, 104 S. Ct. 2052, 2064-68.

## A

Defendant claims that his trial counsel was ineffective first because he did not understand the affirmative defenses of duress, coercion, and entrapment. Trial counsel may be deemed ineffective for misunderstanding the applicable law. (*People v. Hartfield* (1992), 232 Ill. App. 3d 198, 207, 596 N.E.2d 703; see *People v. Chandler* (1989), 129 Ill. 2d 233, 241-50, 543 N.E.2d 1290.) Here, however, defendant's argument is without merit.

In arguing that his trial counsel misunderstood the affirmative defenses of duress and coercion, defendant focuses on two words used in counsel's opening statement to claim that counsel relied on these defenses at trial. Defendant then explains at length why these two defenses are inapplicable. A review of the record and a plain reading of counsel's opening statement show that counsel never asserted duress or coercion as a defense; rather, he merely used the terms in their nonlegal sense to support his proffered defense of entrapment. Counsel obviously understood that these two defenses are inapplicable.

Defendant contends that his trial counsel did not understand the affirmative defense of entrapment because he never cited cases nor did he refer to predisposition. Counsel is not required to cite cases. Additionally, although counsel never specifically referred to predisposition, he consistently argued that defendant was induced by Skolnick to deliver the cocaine and would not have done so but for Skolnick's inducement. Counsel's arguments and conduct demonstrate that he understood the theory of entrapment.

Defendant also insists that his trial counsel misunderstood the entrapment defense because he attempted to convince the court that defendant "was simply helping a friend in need" or "doing a friend a favor." Defendant correctly cites several cases holding that appeals to friendship are not sufficient to support the defense of entrapment.

(See, *e.g.*, *People v. DeBeck* (1990), 204 Ill. App. 3d 15, 18, 561 N.E.2d 1081.) Here, counsel never asserted that helping or doing a favor for a friend was a defense. It was defendant himself and another defense witness, Davis, who offered these explanations for defendant's drug deliveries on the stand. Counsel cannot be held responsible for the testimony of defense witnesses.

### B

■ Defendant next asserts that his trial counsel was ineffective because he failed to call Skolnick as a witness. A failure by trial counsel to contact witnesses who possibly could have a serious impact on a case conceivably may support a claim of ineffective assistance of counsel. *People v. Finley* (1991), 222 Ill. App. 3d 571, 584, 584 N.E.2d 276.

Defendant claims that this case is identical to *People v. Solomon* (1987), 158 Ill. App. 3d 432, 511 N.E.2d 875. There, the appellate court reversed a conviction because defense counsel was ineffective when he set forth the affirmative defense of entrapment without taking reasonable steps to locate the confidential informant. (*Solomon*, 158 Ill. App. 3d at 436-37.) *Solomon* is distinguishable from the present case because there counsel made no effort to locate the informant. In contrast, here, trial counsel compelled production of Skolnick, interviewed him, and then apparently chose not to call him as a witness. Under the circumstances of this case, we conclude that counsel's decision was a matter of trial strategy. Defendant's claim of ineffective assistance of counsel fails in this instance as well.

### III

Defendant lastly asserts that he was entrapped as a matter of law into delivering cocaine by Skolnick, the State informant.

The question of whether entrapment took place is one for the finder of fact and will not be disturbed on appeal unless the reviewing court concludes that defendant was entrapped as a matter of law. (*People v. Poulos* (1990), 196 Ill. App. 3d 653, 658, 554 N.E.2d 448.) In pleading entrapment, an accused necessarily admits having committed the crime, albeit only because of improper governmental inducement. (*People v. Potthast* (1991), 219 Ill. App. 3d 714, 725, 579 N.E.2d 1027.) Once an accused presents slight evidence of entrapment, it becomes incumbent upon the State to prove, in addition to each of the statutory elements of the offense, the absence of entrapment beyond a reasonable doubt. *Potthast*, 219 Ill. App. 3d at 725.

Here, defendant presented sufficient evidence of inducement to shift the burden to the State to prove beyond a reasonable doubt that defendant was not entrapped. Defendant and his wife testified that Skolnick, whom defendant considered a friend in great need, called defendant several times before convincing him to deliver cocaine.

Where a defendant already has the intent to commit a crime and does so merely because an officer affords him an opportunity to commit the crime or purposefully aids and encourages him in its perpetration, there is no entrapment. (*People v. Gaytan* (1989), 186 Ill. App. 3d 919, 925, 542 N.E.2d 1163.) For an entrapment defense to succeed, the evidence must disclose an improper inducement on the government agent's part and a lack of predisposition to commit the crime on defendant's part. (*People v. Katsigiannis* (1988), 171 Ill. App. 3d 1090, 1097, 526 N.E.2d 508.) The absence of a defendant's predisposition to commit a crime is one of the crucial elements of an entrapment defense. *People v. Schillaci* (1988), 171 Ill. App. 3d 510, 517, 526 N.E.2d 871.

The determination of a defendant's predisposition to commit a crime rests upon the facts of the case. (*Katsigiannis*, 171 Ill. App. 3d at 1097.) Factors to be considered in assessing predisposition include: (1) defendant's initial reluctance or ready willingness to commit the crime; (2) defendant's familiarity with drugs and willingness to accommodate the needs of drug users; (3) defendant's willingness to make a profit from the illegal act; (4) defendant's prior or current use of illegal drugs; (5) defendant's participation in testing or cutting the drugs; (6) defendant's engagement in a course of conduct involving similar offenses; (7) defendant's ready access to a drug supply; and (8) defendant's subsequent activities. *Poulos*, 196 Ill. App. 3d at 661.

■ Here, the circuit court, as the trier of fact, expressly found that defendant was predisposed to commit the crime and therefore adjudged him guilty. It based this finding on appropriate factors. Defendant made four drug deliveries on three different occasions, with Skolnick present for only the first. Defendant himself contacted the drug purchaser, Officer Haras, prior to most of the deliveries and repeatedly dealt directly with Haras. Moreover, defendant had a ready access to a drug supply as he also dealt directly with his own drug source, Floyd. Lastly, defendant admitted his prior addiction to cocaine.

Defendant correctly notes that the State's failure to call the informant to testify gives rise to an inference against the State. (*Poulos*, 196 Ill. App. 3d at 661.) Any inference arising out of the State's failure to call the informant, however, can be balanced by evi-

dence of predisposition. (*People v. Tipton* (1980), 78 Ill. 2d 477, 488, 401 N.E.2d 528; *People v. Miszkiewicz* (1992), 236 Ill. App. 3d 411, 430-32, 602 N.E.2d 1312.) We decline to disturb defendant's conviction in light of this more than sufficient evidence of defendant's predisposition.

For the reasons set forth, we affirm defendant's conviction.

Affirmed.

McCORMICK, P.J., and DiVITO, J., concur.